UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Kenneth E. Andersen,                          Court File No. 14-cv-779 (SRN/LIB)

               Petitioner,

v.                                            **REPORT AND RECOMMENDATION**

State of Minnesota,

               Respondent.

---

This matter comes before the undersigned United States Magistrate Judge upon Petitioner Kenneth E. Andersen's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody, [Docket No. 1]; Respondent's Motion to Dismiss Habeas Corpus Petition, [Docket No. 8]; Petitioner's Petition for Writ of Habeas Corpus Supplemental Claims, [Docket No. 13]; and Respondent's Motion to Dismiss Habeas Corpus Petition Supplemental Claims, [Docket No. 15]. The present case has been referred to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For reasons discussed herein, the Court recommends:

1. That Respondent's Motion to Dismiss Habeas Corpus Petition, [Docket No. 8], be **GRANTED**, and that Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody, [Docket No. 1], be **DISMISSED with prejudice**; and

2. That Respondent's Motion to Dismiss Habeas Corpus Petition Supplemental Claims, [Docket No. 15], be **GRANTED**, and that Petitioner's Petition for Writ of Habeas Corpus Supplemental Claims, [Docket No. 13], be **DISMISSED with prejudice** as time-barred.

## I.     BACKGROUND AND STATEMENT OF FACTS

On March 19, 2014, Petitioner Kenneth E. Andersen ("Petitioner"), a Minnesota state prison inmate, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 with the Court, challenging the Minnesota Supreme Court's denial of his petition for state post-conviction relief. (Petition [Docket No. 1]). On June 8, 2014, Petitioner filed a second Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, challenging the Minnesota Supreme Court's denial of his petition for state post-conviction relief on additional grounds. (Supplemental Petition [Docket No. 13]).

### A.     Petitioner's March 19, 2014 Petition

On June 12, 2008, the Becker County, Minnesota District Court sentenced Petitioner to life in prison without the possibility of release after a jury convicted Petitioner of first-degree premeditated murder. (Petition [Docket No. 1], at 1). Petitioner argues that the Minnesota Supreme Court's subsequent denial of his petition for state post-conviction relief *without conducting an evidentiary hearing* violated Minnesota state law and Petitioner's due process rights. (Id.) Petitioner argues that "[h]ad a hearing been ordered, Petitioner would have had Due Process to litigate the following alleged error[s]. The result of the case would have been different had a hearing been granted as that would have led to a new trial." (Id. at 2).

Petitioner's March 19, 2014 Petition alleges four claims, all of which Petitioner raised in the underlying state post-conviction proceedings and all of which "stem from the denial of Petitioner's statutory right to have a hearing in his State Court petition for postconviction relief":

1.  The prosecutor withheld exculpatory police reports, in violation of Rule 33(b) of the Federal Rules of Criminal Procedure;

2. Petitioner did not have the opportunity to cross-examine the creator of a "Winchester Arms" exhibit admitted during the ballistic expert's testimony, in violation of Petitioner's Sixth Amendment right to confrontation;

3. Jail personnel monitored and recorded Petitioner's confidential phone calls with a private investigator, in violation of Petitioner's Sixth Amendment right to confrontation; and

4. The Minnesota state courts summarily denied Petitioner's petition for state post-conviction relief without an evidentiary hearing, in violation of Minnesota state law and Petitioner's due process rights.

(Id. at 2-3). Petitioner requests the Court remand the present issues to the Becker County District Court for an evidentiary hearing. (Id. at 4).

**B.      Petitioner's June 8, 2014 Petition**

On June 8, 2014, without leave of the Court, Petitioner filed a second Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Supplemental Petition"). (Supplemental Petition [Docket No. 13]). In his Supplemental Petition, Petitioner alleges two additional claims, both of which Petitioner raised in his state post-conviction proceedings: (1) that Petitioner's trial counsel was ineffective, and (2) that Petitioner's appellate counsel was ineffective. (Id.)

**C.      Timeline of Relevant State Court Proceedings**

On June 12, 2008, the Becker County District Court sentenced Petitioner to life in prison without the possibly of release after a Becker County jury convicted Petitioner of first-degree premeditated murder, in violation of Minn. Stat. § 609.185(a)(1). (Exhibit A to Respondent's Appendix [Docket No. 10-1], at 1). Petitioner moved the district court for a new trial on June 18, 2008; the district court denied the motion on July 2, 2008. (Id. at 4). Petitioner commenced his direct appeal on September 5, 2008. (Id.) On June 30, 2010, the Minnesota Supreme Court

affirmed Petitioner's conviction.[1] State v. Andersen, 784 N.W.2d 320, 323 (Minn. 2010) ("Andersen I"). The Minnesota Supreme Court entered judgment affirming the Becker County District Court's conviction on August 19, 2010. (Exhibit B to Respondent's Appendix [Docket No. 10-2], at 1).

On December 10, 2010, Petitioner commenced post-conviction proceedings in Minnesota state court, arguing that he was entitled to a new trial because (1) newly discovered evidence was both material and exculpatory; (2) the trial court admitted into evidence recordings of phone calls Petitioner made while in jail awaiting trial in violation of Petitioner's constitutional right to counsel; (3) the trial court admitted into evidence testimony by firearm and palm print experts and an exhibit displaying several types of Winchester bullets in violation of Petitioner's Sixth Amendment right to confrontation; (4) the State committed misconduct during closing argument; (5) the State withheld certain evidence until after trial; (6) Petitioner's trial counsel was ineffective; and (7) Petitioner's appellate counsel was ineffective. Andersen v. State, 830 N.W.2d 1, 5-6 (Minn. 2013), reh'g denied (May 2, 2013) ("Andersen II"). On January 19, 2011, the post-conviction court issued an order denying the petition for post-conviction relief, holding that Petitioner's claims were either meritless on their face or procedurally barred by State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976). Andersen II, 830 N.W.2d at 5-6.

On March 20, 2013, the Minnesota Supreme Court affirmed the post-conviction court's holding, concluding that the post-conviction court did not err in summarily denying the petition for post-conviction relief without an evidentiary hearing. Id. The Minnesota Supreme Court

---

[1] On direct appeal, the Minnesota Supreme Court held that (1) alleged misrepresentations and omissions in the search warrant application were not material to the finding of probable cause; (2) sufficient evidence existed to convict Petitioner of first-degree premeditated murder; (3) the unannounced recording of Petitioner's pretrial phone calls to his attorney did not violate Petitioner's constitutional right to counsel where the district court's finding that investigators did not listen to the phone calls was not clearly erroneous; and (4) Petitioner's pro se claims lacked merit. State v. Andersen, 784 N.W.2d 320, 323 (Minn. 2010).

entered judgment affirming the post-conviction court's denial of Petitioner's petition for post-conviction relief on May 6, 2013. (Exhibit C to Respondent's Appendix [Docket No. 10-3], at 1).

Since May 6, 2013, the present record before the Court indicates that Petitioner filed two motions for discovery in the Becker County District Court, dated May 13, 2013 (granted on June 10, 2013), and August 12, 2013 (denied on September 6, 2013), respectively.

On March 19, 2014, Petitioner filed his first of two federal habeas petitions pursuant to 28 U.S.C. § 2254.

## II.   RESPONDENT'S MOTION TO DISMISS HABEAS CORPUS PETITION, [DOCKET NO. 8]

Pursuant to Rules 2 and 5 of the Rules Governing 28 U.S.C. § 2254 Cases, and 28 U.S.C. § 2244(d), Respondent moves the Court for an order dismissing Petitioner's March 19, 2014 Petition. (Motion to Dismiss [Docket No. 8]).

### A.   Standard of Review

"The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs federal courts to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782-83 (8th Cir. 2007). Under the AEDPA, a federal court may not grant relief to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a state court decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). "[C]learly established Federal law" refers to the holdings, as opposed to the dicta, of Supreme Court opinions that had been released prior to the date on which the state court issued its decision. Bobadilla v. Carlson, 570 F. Supp. 2d 1098, 1102-03 (D. Minn. 2008) aff'd, 575 F.3d 785 (8th Cir. 2009) (citing Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 653, 166 L. Ed. 2d 482 (2006)).

An "unreasonable application" of federal law occurs when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 408. Federal courts "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). In reviewing state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

Significantly, the AEDPA establishes a one-year statute of limitations for all Section 2254 habeas actions:

A 1-year period of limitation shall apply to an application for a
writ of habeas corpus by a person in custody pursuant to the

6

judgment of a State court. The limitation period shall run from the latest of –

  **(A)**  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  **(B)**  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

  **(C)**  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

  **(D)**  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Additionally, "[t]he time during which a <u>properly filed</u> application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." 28 U.S.C. § 2244(d)(2) (emphasis added).

### B. Petitioner's March 19, 2014 Petition is timely.

As a threshold matter, the Court determines whether Petitioner filed the present Section 2254 petition within the statutorily prescribed one-year period.[2]

First, the Court determines when the one-year statute of limitations period began to run, as identified in Section 2244(d)(1). Nothing in the present record before the Court indicates that any state-created impediment prevented Petitioner from filing a Section 2254 petition, nor does

---

[2] Although Respondent does not articulate any specific, substantive arguments concerning the timeliness of Petitioner's March 19, 2014 Petition, and, indeed, seemingly *concedes* that the March 19, 2014 Petition *is timely* in its Response, [Docket No. 7], the Motion to Dismiss itself conclusorily moves to dismiss the March 19, 2014 Petition as time-barred. (Motion to Dismiss [Docket No. 8]) ("Respondent hereby submits a motion to dismiss Petitioner's § 2254 Petition for Writ of Habeas Corpus on the grounds that the petition is time-barred."). The accompanying memorandum is devoid of any argument regarding timeliness, [Docket No. 9]. Regardless of the somewhat conflicting nature of Respondent's submissions to the Court, any issue regarding whether Respondent has waived any argument that the March 19, 2014 Petition is untimely is moot because, by the Court's independent, *sua sponte* calculation, the Petition is timely.

Petitioner claim any violation of a newly recognized constitutional right made retroactive to his case on collateral review.

With respect to Section 2244(d)(1), subsection D, "the date on which the factual predicate of the claim(s) presented could have been discovered through the exercise of due diligence," Petitioner necessarily implies that he did not become aware of his primary claim – namely, that the state post-conviction courts wrongfully denied Petitioner an evidentiary hearing – until the conclusion of his state post-conviction proceedings. However, setting this claim aside for the time being, nothing in the present record before the Court indicates that Petitioner could not have discovered the factual predicate of his remaining claims prior to conclusion of his direct appeal, as each of Petitioner's remaining three claims concern events alleged to have occurred during Petitioner's original trial in June 2008. The present record before the Court indicates that Petitioner was well-aware of – or could have become well-aware of via the exercise of due diligence – the existence of the "untimely disclosed" police reports, the Winchester exhibit, and the recorded phone calls prior to the conclusion of his direct appeal.

Accordingly, with respect to three of Petitioner's claims, nothing in the present record before the Court prompts consideration of any date other than the date of final judgment – described in Section 2244(d)(1), subsection A – as the date Petitioner's one-year statute of limitations period began running.

Section 2244(d)(1), subsection A provides that Petitioner's AEDPA one-year statute of limitations began running on the date Petitioner's state court judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). The Minnesota state courts concluded direct review of Petitioner's underlying state court judgment on August 19, 2010, upon the Minnesota Supreme Court's entry of final

judgment affirming Petitioner's conviction. If a petitioner does not seek a writ of certiorari from the United States Supreme Court on direct appeal, direct review becomes final "when the time for filing a certiorari petition expires." Gonzalez v. Thaler, 132 S. Ct. 641, 653, 181 L. Ed. 2d 619 (2012) (quoting Clay v. United States, 537 U.S. 522, 527 (2003)). The "time for appeal or application for a writ of certiorari to review the judgment of a State court in a criminal case shall be as prescribed by the rules of the Supreme Court." 28 U.S.C. § 2101(d). The Supreme Court Rules provide that "[a] petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . shall be deemed in time when it is filed with the Clerk of this Court within 90 days after the entry of judgment[.]" S. Ct. Rule 13.1 (as cited in Mississippi v. Turner, 498 U.S. 1306, 1306 (1991)). Petitioner's direct review became final when his time for filing for certiorari expired, namely, ninety (90) days after the August 19, 2010, entry of judgment, or November 17, 2010. Accordingly, Petitioner's state court judgment became final and the AEDPA one-year statute of limitations began running on November 18, 2010. Barring any applicable tolling, Petitioner's one-year statute of limitations was set to expire on November 18, 2011.

However, prior to the expiration of the one-year statute of limitations, Petitioner initiated collateral post-conviction proceedings in state court. Pursuant to Section 2244(d)(2), the period during which Petitioner pursued state post-conviction relief does not count against the one-year statute of limitations. The statute of limitations remains tolled during the entire period of time that such collateral proceedings continue to pend in any state court, including the state appellate courts. Mills v. Norris, 187 F.3d 881, 883-84 (8th Cir. 1999).

Petitioner "stopped the clock" pursuant to Section 2244(d)(2) when he initiated post-conviction proceedings in state court on December 10, 2010. These proceedings concluded on May 6, 2013, upon entry of final judgment by the Minnesota Supreme Court.

Petitioner's one-year statute of limitations clock ran between November 18, 2010, and December 10, 2010, as the AEDPA one-year statue of limitations is not tolled between the conclusion of a petitioner's direct appeal and his initiation of post-conviction proceedings. McMullan v. Roper, 599 F.3d 849, 852 (8th Cir. 2010) ("[t]he time between the conclusion of a direct appeal and the filing of a state court application for post-conviction relief does not toll the AEDPA statute of limitations") cert. denied, 131 S. Ct. 602 (2010). Accordingly, with respect to three of Petitioner's four claims, by the Court's calculation, as of December 10, 2010, twenty-two (22) days of Petitioner's one-year statute of limitations time period had run.

Petitioner's clock began running once again on May 6, 2013. "[T]he one-year statute of limitations under the AEDPA is not tolled for the ninety-day period following final denial of state post-conviction relief, during which a petitioner may seek a writ of certiorari from the United States Supreme Court." Shepersky v. Wengler, No. 09-cv-2049 (PJS/SRN), 2010 WL 419953, at *4 (D. Minn. Jan. 29, 2010) (citing Snow v. Ault, 238 F.3d 1033, 1035 (8th Cir. 2001) cert. denied, 532 U.S. 998 (2001)); see also Jihad v. Hvass, 267 F.3d 803, 805 (8th Cir. 2001) (holding that the statute of limitations period began to run again on the date the Minnesota Supreme Court denied the petitioner post-conviction relief). Petitioner's clock continued ticking until he filed the present Section 2254 Petition on March 19, 2014. (Petition [Docket No. 1]). Between May 6, 2013, and March 19, 2014, three-hundred and seventeen (317) additional days of Petitioner's one-year allotment had run, bringing his statute of limitations count to three-hundred and thirty-nine (339) days. "Section 2244(d)(2) only stops, but does not reset, the

[statute of limitations] clock from ticking and cannot revive a time period that has already expired." Baldwin v. Smith, No. 13-cv-2655 (DSD/LIB), 2014 WL 641514, at *5 (D. Minn. Feb. 19, 2014) (quoting Cordle v. Guarino, 428 F.3d 46, 48, n. 4 (1st Cir. 2005) (citations omitted)).

With respect to claims one through three of Petitioner's March 19, 2014 Petition, Petitioner's Section 2254 Petition is timely. Accordingly, Petitioner's claim that the state post-conviction courts wrongfully denied Petitioner an evidentiary hearing is necessarily timely as well, considering its one-year statute of limitations likely did not commence running until the conclusion of Petitioner's state post-conviction proceedings, or May 6, 2013. The March 19, 2014 Petition, in its entirety, is timely.

### C. Petitioner's March 19, 2014 Petition fails to state an actionable claim for relief.

#### 1. Petitioner has no federal right to a state post-conviction evidentiary hearing.

The Court begins its analysis with Petitioner's most prominent claim, namely, that the state post-conviction courts wrongfully denied Petitioner an evidentiary hearing. Petitioner's claim that that state post-conviction courts erred in summarily denying his petition for post-conviction relief without holding an evidentiary hearing *explicitly* alleges a violation of Minnesota *state* law – Minn. Stat. § 590.04, subd. 1. (Petition [Docket No. 1], at 2-3). Petitioner generally and conclusorily alleges that the denial of an evidentiary hearing violated his "due process" rights, but Plaintiff fails to specifically identify – nor is the Court able to discern – any specific violation of the Constitution or other law of the United States.

As articulated in the Standard of Review section, supra, the Court entertains Section 2254 petitions "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. See also Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam) ("It is axiomatic that federal courts may intervene in the state judicial

process only to correct wrongs of a constitutional dimension."); Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States.").

A state prisoner does not have a constitutional or other federal right to post-conviction proceedings in state court. See Lackawanna County Dist. Att'y v. Coss, 532 U.S. 394, 402 (2001) (noting that "each State has created mechanisms for both direct appeal and state post-conviction review, even though there is no constitutional mandate that they do so") (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987) (no constitutional right to state post-conviction review; states "have no obligation to provide this avenue of relief")) (internal citations omitted). In the present case, Petitioner requests the Court review a decision of the Minnesota Supreme Court regarding application of Minnesota state statute. Because Petitioner has no constitutional right to an evidentiary hearing in state post-conviction proceedings, and because Petitioner fails to identify a violation of his constitutional rights beyond a general reference to "due process," Petitioner's claim that the state post-conviction courts wrongfully denied Petitioner an evidentiary hearing necessarily fails. Petitioner's fourth claim is not properly before the Court.

## 2.     The state post-conviction courts disposed of two of Petitioner's claims on non-federal grounds.

Federal courts will not review a state court decision that rests on "independent and adequate state procedural grounds." Barnett v. Roper, 541 F.3d 804, 808 (8th Cir. 2008) (quoting Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). "A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds." Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004) cert. denied, 546 U.S. 828 (2005). When a state appellate court expressly declines to address the merits of a

particular post-conviction claim pursuant to state procedural rules, the claim is "procedurally

defaulted" for federal habeas corpus purposes:

> As the Eighth Circuit Court of Appeals explained in <u>Hall v. Delo</u>,
> 41 F.3d 1248, 1250 (8th Cir. 1994), "[a] federal claim has not been
> fairly presented to the state courts," and is therefore procedurally
> defaulted, "when the state court has declined to decide the federal
> claim on the merits because the petitioner violated a state
> procedural rule."

<u>Loye v. Roy</u>, No. 11-cv-3715 (ADM/JSM), 2012 WL 435724, at *2 (D. Minn. Jan. 12, 2012)

<u>report and recommendation adopted</u>, No. 11-cv-3715 (ADM/JSM), 2012 WL 435304 (D. Minn.

Feb. 10, 2012). <u>See also</u> <u>Satter v. Leapley</u>, 977 F.2d 1259, 1261 (8th Cir. 1992) ("Ordinarily, a

federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only

those claims which the petitioner has presented to the state courts in accordance with state

procedural rules.").

     A petitioner violates Minnesota state court procedural rules when the petitioner raises a

claim during state post-conviction proceedings that he had not raised when he had the first

opportunity to do so; Minnesota codified this principle in <u>State v. Knaffla</u>: "where direct appeal

has once been taken, all matters raised therein, and all claims known but not raised, will not be

considered upon a subsequent petition for postconviction relief." 243 N.W.2d 737, 741 (Minn.

1976).

     In <u>Andersen II</u>, the Minnesota Supreme Court explicitly dismissed two of Petitioner's

present claims[3] because they were "known or should have been known at the time of his direct

appeal, and are therefore barred by the rule announced in <u>State v. Knaffla</u>, 309 Minn. 246, 252,

---

[3] Petitioner concedes that his Petition raises only claims previously raised in his state post-conviction proceedings. (Petition [Docket No. 1], at 4). Accordingly, the Court presumes that those claims addressed by the Minnesota Supreme Court in <u>Andersen II</u> are identical to claims raised in the March 19, 2014 Petition.

243 N.W.2d 737, 741 (1976)." <u>Andersen II</u>, 830 N.W.2d at 8. Affirming the findings of the post-conviction court, the Minnesota Supreme Court held,

> At the time of his direct appeal, Andersen knew that (1) the jail had recorded his telephone calls; . . . and (3) the State had not disclosed the Baker report in its pretrial discovery. None of these claims are novel, nor has Andersen established that these claims have substantial merit and are being asserted without deliberate or inexcusable delay. We therefore conclude that the postconviction court did not err when it concluded that the claims in question were barred by the <u>Knaffla</u> rule.

<u>Id.</u> (citations omitted). Even if Petitioner now asserts that the state post-conviction courts erred in concluding that his claims regarding his recorded telephone calls and the Government's failure to timely disclose significant police reports were procedurally barred *without first conducting an evidentiary hearing*, this Court is nevertheless barred from addressing the Minnesota Supreme Court's determination that Petitioner's claims were procedurally barred pursuant to <u>Knaffla</u>. <u>See Loye</u>, 2012 WL 435724, at *4 ("Petitioner may believe that the state courts somehow misapplied the <u>Knaffla</u> rule, but that is not an argument that could be raised and considered here, because this Court cannot review and overturn a state court's application of a state procedural rule.") (<u>citing Murray v. Hvass</u>, 269 F.3d 896, 899 (8th Cir. 2001) ("it is not the province of a federal court to decide whether a matter ought to be considered procedurally defaulted under state law") <u>cert. denied</u>, 535 U.S. 935 (2002); <u>May v. Iowa</u>, 251 F.3d 713, 716 (8th Cir. 2001) ("[w]e may not disturb a state court decision interpreting state law on habeas review . . . and thus we reject [the petitioner's] contention that he did not default his three ineffective assistance of counsel claims"); <u>Clemons</u>, 381 F.3d at 751 ("federal courts do not look at whether state courts have correctly applied their own procedural rules[;] [t]hey simply determine whether those procedural rules were applied to bar the claim")).

Because the state post-conviction courts dismissed Petitioner's claims concerning his recorded telephone calls and the Government's failure to timely disclose certain police reports on independent and adequate state procedural grounds, Petitioner's first and third claims are not properly before the Court.

> **3.      The state post-conviction courts' conclusions regarding the Winchester exhibit did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law, nor a decision based on unreasonable factual determinations.**

One claim remains before the Court: whether Petitioner's inability to cross-examine the creator of a "Winchester Arms" exhibit admitted during a ballistic expert's testimony violated Petitioner's Sixth Amendment right to confrontation. Because the Minnesota Supreme Court in Andersen II "assum[ed] without deciding that Andersen's Confrontation Clause claim is not Knaffla-barred" and, reaching the merits of Petitioner's claim, concluded that the claim was ultimately meritless either because the evidence at issue was not testimonial or because its admission did not constitute reversible error, the Court reaches the merits of Petitioner's remaining claim and considers whether Petitioner has stated an actionable Section 2254 claim for relief.

As articulated in the Standard of Review section, supra, a federal court may not grant relief to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Neither the March 19, 2014 Petition nor Petitioner's response to Respondent's motion to dismiss offers any specific arguments as to why or how the state post-conviction courts' decision resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or a decision that was based on unreasonable factual determinations. In fact, Petitioner seemingly *abandons* his Confrontation Clause claim in his response to the present motion to dismiss. (Petitioner's Resp. Mem. [Docket No. 12]). However, in the interest of complete judicial review, the Court undertakes an independent analysis of Petitioner's remaining claim.

As articulated above, Petitioner challenges the admission of a "Winchester Arms" exhibit displaying several types of Winchester bullets. Petitioner argues that the admission of the exhibit violated Petitioner's Sixth Amendment right to confrontation. The present record before the Court indicates that in Petitioner's underlying June 2008 trial, during the expert testimony of Nathaniel Pearlson, a Minnesota Bureau of Criminal Apprehension firearms examiner, the State introduced what appears to be a photographic/illustrated exhibit provided to Pearlson by a technical advisor for the Winchester Owens Company. Although the Court does not have a copy of the exhibit itself, it appears to the Court that the exhibit displayed five (5) types of .30 caliber bullets Winchester manufactured and/or marketed at that time. (Exhibit 6 to Respondent's Appendix [Docket No. 10-6], at 9-16). Pearlson testified that after determining that bullets retrieved from the victim's body had a black oxide copper surface, he contacted Winchester for information regarding the bullets it manufactured/marketed with that particular coating. Pearlson testified that he contacted Winchester because it was the only mass-production bullet manufacture he knew of that used black oxide copper coating. (Id. at 9-10).

The present record before the Court indicates that Winchester provided materials picturing five (5) types of bullets, and that for each of the five types of bullets the materials contained an image of the intact bullet and a second image of a cross-section cut-away displaying the internal characteristics of the bullet. (Id. at 10-15). Pearlson referred to the exhibit to illustrate similarities between the bullets found in the victim's body and .30 caliber Ballistic Silver Tip Bullets. (Id.) Pearlson testified that the bullets found in the victim's body were consistent with .30 caliber Ballistic Silver Tip bullets. (Id. at 14-15).

Relying on the principles of Crawford v. Washington, 541 U.S. 36 (2004), the state post-conviction courts held that the exhibit at issue was not testimonial and, therefore, its admission did not violate Petitioner's right to confrontation. Citing Crawford, the Minnesota Supreme Court recognized that that a successful Confrontation Clause claim establishes (1) that the statement in question was testimonial, (2) that the statement was admitted for the truth of the matter asserted, and (3) that the defendant was unable to cross-examine the declarant. Andersen II, 830 N.W.2d at 9 (citing Crawford, 541 U.S. at 59 & n.9). The expert witness (Pearlson) referred to the exhibit in question – displaying several types of Winchester bullets – merely to assist him in explaining the differences between various types of bullets. The exhibit, not prepared for litigation, was marketing material the expert witness had requested from the Winchester Owen Corporation. Andersen II, 830 N.W.2d at 9.

Nothing in the present record before the Court indicates that the Minnesota Supreme Court issued a decision contrary to or involving an unreasonable application of clearly established federal law. The Sixth Amendment Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. AMEND. VI. The right of confrontation applies in state criminal

proceedings by virtue of its incorporation into the Fourteenth Amendment's guarantee of due process. Pointer v. Texas, 380 U.S. 400, 403 (1965). As articulated above, the Minnesota Supreme Court correctly applied seminal, controlling Confrontation Clause case law in reaching its decision (i.e., Crawford), which provides that a successful Confrontation Clause claim requires identification of a *testimonial* statement admitted for the truth of the matter asserted.

In Williams v. Illinois, the United States Supreme Court held that the admission of testimony by an expert who relied upon a DNA profile produced by an outside laboratory did not violate the Confrontation Clause. 132 S. Ct. 2221, 2227 (2012). The Court held that "[o]ut-of-court statements that are related by the *expert solely for the purpose of explaining the assumptions* on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause." (Id. at 2228.) (emphasis added). Akin to the facts in Williams, the record in the present case indicates that Pearlson similarly referred to the Winchester exhibit in question for the sole purpose of explaining his conclusions; the exhibit itself – not made in the course of litigation – did not offer any *testimonial* statements of its own, much less accusatory statements offered for their truth. C.f., Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310 (2009) (holding that, applying the principles established in Crawford, a document created solely for an "evidentiary purpose," made in aid of a police investigation, ranks as testimonial); Bullcoming v. New Mexico, 131 S. Ct. 2705, 2717, 180 L. Ed. 2d 610 (2011) (holding that a certificate concerning the results of a BAC analysis, performed and created for an evidentiary purpose, was testimonial).

On the present record before the Court, the Winchester exhibit in question did not constitute or contain any statement offered for the truth of the matter asserted but was simply marketing material produced by the Winchester Owens Company, not in the course of litigation,

admitted into evidence for the sole purpose of aiding the expert witness in explaining his opinion that the bullets recovered from the victim's body were consistent with .30 caliber Ballistic Silver Tip bullets.

Nothing in the present record before the Court indicates that the state post-conviction courts' decisions were contrary to and/or involved the unreasonable application of clearly established federal law. To the contrary, the Minnesota Supreme Court very clearly *correctly identified and applied* controlled, clearly established federal law. Similarly, nothing in the present record before the Court indicates that the state post-conviction courts made unreasonable factual determinations, and Petitioner identifies none. Petitioner's second claim fails to state an actionable claim for relief pursuant to Section 2254.

For the foregoing reasons, the Court recommends that Respondent's Motion to Dismiss Habeas Corpus Petition, [Docket No. 8], be **GRANTED**.

### D.    Certificate of Appealability

A Section 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In the present case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, could decide Petitioner's claims any differently than the Court has decided here. Petitioner has not identified, and the Court cannot independently

discern, anything novel, noteworthy, or worrisome about this case that warrants further appellate review. The Court therefore recommends that Petitioner not be granted a COA in this matter. See, e g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

The Court recommends that Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody, [Docket No. 1], be **DISMISSED with prejudice**.

## III.   RESPONDENT'S MOTION TO DISMISS HABEAS CORPUS PETITION SUPPLEMENTAL CLAIMS, [DOCKET NO. 15]

Respondent moves the Court for an order dismissing Petitioner's Supplemental Section 2254 Petition as time-barred. (See [Docket No. 15]). Petitioner did not respond to the motion.

Even disregarding any potential "ticking of the clock" that occurred between the date that Petitioner's direct review concluded and the date that Petitioner initiated post-conviction proceedings in state court, Petitioner filed his supplemental claims more than one year after the state court post-conviction proceedings concluded on May 6, 2013. Nothing in the present record before the Court indicates that *anything* tolled Petitioner's one-year statute of limitations between May 6, 2013, and June 8, 2014. Petitioner's June 8, 2014 claims are time-barred. See Section II.B., supra.

Additionally, the Court finds no reason as to why any non-tolled time period should be equitably tolled. Courts equitably toll only "when extraordinary circumstances beyond a prisoner's control make it impossible to file a [habeas corpus] petition on time . . . [or] when conduct of the defendant has lulled the plaintiff into inaction." Jihad, 267 F.3d at 805. "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented

timely filing." <u>Nelson v. Norris</u>, 618 F.3d 886, 892-93 (8th Cir. 2010) (citations omitted). Petitioner has demonstrated neither.

The Court recommends that Respondent's Motion to Dismiss Habeas Corpus Petition Supplemental Claims, [Docket No. 15], be **GRANTED**, and that Petitioner's Petition for Writ of Habeas Corpus Supplemental Claims, [Docket No. 13], be **DISMISSED with prejudice** as time-barred. For the same reasons articulated in Section II.D., <u>supra</u>, the Court recommends that Petitioner not be granted a COA in this matter.

## IV.     CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

1.  That Respondent's Motion to Dismiss Habeas Corpus Petition, [Docket No. 8], be **GRANTED**, and that Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody, [Docket No. 1], be **DISMISSED with prejudice**; and

2.  That Respondent's Motion to Dismiss Habeas Corpus Petition Supplemental Claims, [Docket No. 15], be **GRANTED**, and that Petitioner's Petition for Writ of Habeas Corpus Supplemental Claims, [Docket No. 13], be **DISMISSED with prejudice** as time-barred.

Dated: January 26, 2015                                    s/Leo I. Brisbois
                                                           Leo I. Brisbois
                                                           U.S. MAGISTRATE JUDGE

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 9, 2015**, a writing that

specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by February 23, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.